**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN BROWN, #416331,

        Petitioner,

v.                                 Case No. 2:06-CV-11868
                                      Honorable Victoria A. Roberts
                                      Magistrate   Judge   Steven   D.   Pepe

ANDREW JACKSON,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION**
**FOR A WRIT OF HABEAS CORPUS**

     Petitioner Steven Brown,  is a state inmate  incarcerated at Pine River  Correctional Facility in St. Louis, Michigan.  Petitioner was convicted after a jury trial in Wayne County Circuit Court of second-degree murder, Mich. Comp. Laws §750.317. He was sentenced to a term of twenty-five to fifty years' imprisonment.  Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. §2254, through counsel.  For reasons that follow, the Court **DENIES** the petition.

**I. FACTUAL BACKGROUND**

     Petitioner's conviction arose from the shooting death of Glenn Wesley Pierce.  Mr. Pierce was an employee of the Gardenia Party Store in Highland Park, Michigan.  At some point during Mr. Pierce's shift, the owner, William Zbair, directed him to go to the bank to deposit checks and to withdraw $2,886.00 in cash.  Mr. Pierce went and made the requested transactions.  As Mr. Pierce left the bank and made his way back to his car, he was allegedly approached by Petitioner and an individual named Jerry Swims who were

waiting for Mr. Pierce to leave the bank.[1]  According to a statement made by Petitioner, he and Mr. Swims were together when Mr. Swims approached Mr. Pierce and demanded money.  Mr. Swims then shot Mr. Pierce in the neck after Mr. Pierce resisted, and took the money Mr. Pierce had just withdrawn from the bank.  Mr. Pierce died within twenty minutes after an ambulance arrived.  Petitioner and Mr. Swims fled the scene to the home of a female friend of Mr. Swims, Glenda Lewis.  Approximately one week later, Petitioner was arrested in connection with the robbery and murder of Mr. Pierce.  Mr. Swims was never apprehended.

> [W]hile in police custody two days later, [Petitioner] signed a statement incriminating himself in the offense.  [Petitioner] was later charged with first-degree felony-murder, MCL 750.316(1)(b), and possession of a firearm during the commission of a felony, MCL 750.227b.  He was convicted of the lesser offense of second-degree murder and acquitted of felony-firearm.

*People v. Brown,* No: 245006, 2004 WL 1103708, *1 (Mich. Ct. App. May 18, 2004)

## II.  PROCEDURAL HISTORY

Prior to commencement of trial, the parties explored several pre-trial matters.  A motion to suppress the statement Petitioner made to the police was filed on November 12, 1999.  After a suppression hearing was conducted on January 4, 14, 28, 31, and February 2, 2000, the trial court denied the motion.  (*People v. Brown*, Case No. 99-10005, 3rd Judicial Circuit Court, Criminal Division, Opinion dated 2-17-00).  Petitioner appealed the trial court decision by making the following arguments:

---

[1]According to the trial court testimony Petitioner and Jerry Swims knew Mr. Pierce and were aware of the banking routine of Mr. Zbair.  The testimony and witness statements reveal that Petitioner and Jerry Swims were initially at the Gardenia Party Store loitering outside the store until Mr. Pierce left for the bank, at which time they followed him into the bank parking lot.

2

"I. THE POLICE ARRESTED BROWN WITHOUT A WARRANT AND ON LESS THAN PROBABLE CAUSE. THEY HELD HIM INCOMMUNICADO FOR OVER 51 HOURS UNTIL HE GAVE THE INCULPATORY STATEMENT THAT THE POLICE HAD TO HAVE TO GET A WARRANT. THERE WERE NO EXTRAORDINARY CIRCUMSTANCES THAT JUSTIFY THE DELAY IN HIS ARRAIGNMENT BEYOND 48 HOURS. THE UNREASONABLE DELAY FOR THE PURPOSE OF EXTRACTING A STATEMENT FROM HIM VIOLATED BROWN'S FOURTH AMENDMENT RIGHTS. BROWN'S STATEMENT MUST BE SUPPRESSED.

II. THE POLICE HELD BROWN INCOMMUNICADO FOR OVER 51 HOURS WITHOUT AN ARRAIGNMENT BEFORE HE GAVE AN INCULPATORY STATEMENT. HE WAS REPEATEDLY BROUGHT DOWN TO HOMICIDE WHERE HIS REQUESTS FOR AN ATTORNEY WERE IGNORE[D]. HE WAS ILL, SUFFERED FROM LACK OF SLEEP, AND AN INABILITY TO KEEP FOOD IN HIS STOMACH. RELYING ON PROMISES OF MEDICAL ATTENTION AND LENIENC[Y], BROWN ULTIMATELY SIGNED AN INCULPATORY STATEMENT. CONTRARY TO THE TRIAL COURT'S CONCLUSION, BROWN'S STATEMENT WAS INVOLUNTARY."

The Court of Appeals remanded the case and ordered the trial court to consider whether the reasons given were sufficient to justify a delay in Petitioner's arraignment. *People v. Brown*, No: 227253, (Mich. Ct. App. June 28, 2000). However, the Michigan Court of Appeals then granted the prosecution's motion for rehearing and vacated the June 28, 2000 Order. *People v. Brown*, No: 227253 ( Mich. Ct. App. July 31, 2000). The appellate court held Petitioner's appeal in abeyance pending its decision in *People v Manning*, Docket No. 224898. *Id.*

Petitioner next filed an interlocutory application for leave to appeal setting forth the following claims:

"I. THE POLICE DELAYED BROWN'S ARRAIGNMENT WITHOUT JUSTIFICATION. INVESTIGATOR SHAW TRIED TO JUSTIFY THE DELAY BY CLAIMING HE WAS TRYING TO FIND MOORE FOR A SECOND LINEUP BASED ON EVENTS SURROUNDING A PHOTO SHOW-UP PRIOR TO BROWN'S ARREST. BROWN OFFERED UNDISPUTED EVIDENCE THAT SHAW LIED ABOUT THE DATE OF THE PHOTO SHOW-UP AND THAT IT OCCURRED AFTER BROWN'S ARRAIGNMENT. IT

3

CANNOT JUSTIFY THE DELAY IN ARRAIGNMENT, YET THE COURT REFUSED TO CONSIDER.

II. *MIRANDA* WARNINGS ARE REQUIRED PRIOR TO CUSTODIAL INTERROGATION IN ORDER FOR RESULTING STATEMENTS TO BE ADMISSIBLE AT TRIAL. THE DETROIT POLICE HELD BROWN IN THE 9th FLOOR LOCK-UP AT POLICE HEADQUARTERS. WITHOUT FIRST GIVING BROWN HIS *MIRANDA* WARNINGS, INVESTIGATOR SHAW INTERROGATED BROWN ABOUT HIS NICKNAME WHILE HE WAS IN THAT LOCK-UP. DESPITE THE CLEAR MANDATE OF *MIRANDA*, THE TRIAL COURT REFUSED TO SUPPRESS THE STATEMENT BROWN MADE TO INVESTIGATOR SHAW."

Petitioner's delayed application for leave to appeal was ultimately denied.  *People v. Brown*, No. 227253 (Mich. Ct. App. Jan. 11, 2001). The interlocutory application for leave to appeal was likewise denied.   *People v Brown*, No. 229355 (Mich. Ct. App. Jan. 11, 2001).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court. The Court addressed some pending matters as well as the application for leave to appeal:

Prosecution's motion for immediate consideration of the motion for reconsideration is GRANTED.  Application for leave to appeal from the January 11, 2001 decision of the Court of Appeals is DENIED.  This Court's Order of October 12, 2001 staying trial court proceedings is VACATED. Motion for reconsideration id DENIED.

*People v. Brown,* 465 Mich. 898; 636 NW2d 144 (2001) (table).  Justices Cavanagh and Kelly would have granted leave to appeal.  *Id.*

Trial began on May 6, 2002, and Petitioner was convicted of second-degree murder.

Petitioner filed a direct appeal with the Michigan Court of Appeals raising the following claim:

"I. THE PROSECUTION PRESENTED INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT MR. BROWN, EITHER AS PRINCIPAL OR AS AIDER AND ABETTOR, KNEW OF, PARTICIPATED IN OR COMMITTED THE KILLING OF MR. PIERCE, AND NO EVIDENCE

4

WAS PRESENTED TO SHOW HE KNEW THE CO-DEFENDANT WAS ARMED; FURTHER, THE EVIDENCE PRESENTED, IN A LIGHT MOST FAVORABLE TO THE PROSECUTION, ALLOWS ONLY FOR THE INFERENCE THAT MR. BROWN ASSISTED ANOTHER IN AN ATTEMPT TO STEAL MONEY FROM MR. PIERCE, AND THE TRIAL COURT'S REFUSAL TO GRANT A DIRECTED VERDICT AS TO THE FELONY (LARCENY) MURDER CHARGE WAS AN ABUSE OF DISCRETION NECESSITATING REVERSAL."

Petitioner filed a Supplemental "Standard 11" Brief which set forth the following claims:

"I. THE TRIAL COURT'S REFUSAL TO SUPPRESS MR. BROWN'S CONFESSION WAS CLEARLY ERRONEOUS AND A DEPRIVATION   OF MR. BROWN'S STATE AND FEDERAL RIGHTS AGAINST INVOLUNTARY SELF-INCRIMINATION, DUE PROCESS OF LAW, AND HIS CONSTITUTIONAL RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE, WHERE

A. INCRIMINATING STATEMENTS WERE EXTRACTED ONLY AFTER MORE THAN 51 HOURS OF PRE-ARRAIGNMENT DELAY, WHERE MR. BROWN WAS REPEATEDLY INTERROGATED, DENIED HIS REQUESTS FOR COUNSEL, DENIED NEEDED MEDICAL ATTENTION AND TREATMENT, AND SLEEP IN THE UNINHABITABLE CONDITIONS OF THE (NOTORIOUS) DETROIT POLICE DEPARTMENT'S 9th FLOOR OF 1300 BEAUBIEN; AND

B. THE ARREST AND DETENTION WERE ILLEGAL AS BEING WITHOUT PROBABLE CAUSE.

II. MR. BROWN WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL THROUGH PROSECUTORIAL AND POLICE MISCONDUCT, CONSISTING OF IMPROPER ARGUMENT, COMMENTS, AND WITHHOLDING OF DISCOVERY MATERIALS.

III. THE CUMULATIVE EFFECT OF ERROR DENIED MR. BROWN HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL."

Petitioner's conviction was affirmed. *People v. Brown*, No. 245006, 2004 WL 1103708

(Mich. Ct. of App. May 18, 2004).  Petitioner filed an application for leave to appeal in the

Michigan Supreme Court raising the following issues:

5

"I. THE PROSECUTION PRESENTED INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT MR. BROWN, EITHER AS PRINCIPAL OR AS AIDER AND ABETTOR, KNEW OF, PARTICIPATED IN OR COMMITTED THE KILLING OF MR. PIERCE, AND NO EVIDENCE WAS PRESENTED TO SHOW HE KNEW THE CODEFENDANT WAS ARMED; FURTHER, THE EVIDENCE PRESENTED, IN THE LIGHT  MOST FAVORABLE TO THE PROSECUTION ALLOWS ONLY FOR THE INFERENCE THAT MR. BROWN ASSISTED ANOTHER IN AN ATTEMPT TO STEAL MONEY FROM MR. PIERCE, AND THE TRIAL COURT'S REFUSAL TO GRANT A DIRECTED VERDICT AS TO THE FELONY (LARCENY) MURDER CHARGE WAS NO ABUSE OF DISCRETION NECESSITATING REVERSAL.

II. THE TRIAL COURT'S REFUSAL TO SUPPRESS MR. BROWN'S CONFESSION WAS CLEARLY ERRONEOUS AND A DEPRIVATION OF MR. BROWN'S STATE AND FEDERAL RIGHTS AGAINST INVOLUNTARY SELF-INCRIMINATION, DUE PROCESS OF LAW, AND HIS CONSTITUTIONAL RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE.

III. MR. BROWN WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL  RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL THROUGH PROSECUTORIAL AND POLICE MISCONDUCT, CONSISTING OF IMPROPER ARGUMENT, COMMENTS AND WITHHOLDING OF DISCOVERY MATERIALS.

IV. THE CUMULATIVE EFFECT OF ERROR DENIED MR. BROWN HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL."

The Michigan Supreme Court denied relief "because we are not persuaded that the questions presented should be reviewed by this Court."  *People v. Brown*, No: 126443 (Mich. Sup. Ct. Jan. 21, 2005)[2].

Petitioner then filed this petition pursuant to 28 U.S.C. § 2254, raising the following claims:

---

[2]The Court cannot cite to a Michigan Reporter source; it appears there is a "mix-up" with the docket numbers and dates in this case on West Law and one where the party defendant's name is "Charles Thomas Brown."

"I. STEVEN BROWN'S STATEMENT WAS NOT VOLUNTARY. HIS WILL WAS OVERBORN BY THE CUMULATIVE EFFECT OF THE FOLLOWING: AN ILLEGAL ARREST, AN UNCONSTITUTIONAL DELAY IN ARRAIGNMENT, BEING HELD INCOMMUNICADO FOR 51 HOURS IN THE FILTHY, ROACH-INFESTED 9th FLOOR LOCKUP WITH NO PLACE TO SLEEP, BEING FREQUENTLY QUESTIONED WITHOUT *MIRANDA* RIGHTS, DENIED OF HIS REPEATED REQUEST FOR AN ATTORNEY OR PHONE CALL, AND THE DENIAL OF MEDICAL TREATMENT FOR HIS VOMITING AND DIARRHEA. UNDER THE TOTALITY OF THE CIRCUMSTANCES, BROWN'S STATEMENT SHOULD HAVE BEEN SUPPRESSED.

II. THE EVIDENCE THAT BROWN WAS INVOLVED IN THE ROBBERY/MURDER OF GLENN PIERCE WAS EQUIVOCAL, WHILE BROWN WAS IN THE AREA, HE DENIED BEING WITH SWIMS. OF THE WITNESSES WHO IDENTIFIED BROWN AT TRIAL, SOME HAD BEEN SHOWN HIS PICTURE BY THE POLICE AND TOLD HE WAS PART OF THE MURDER OR HAD PREVIOUSLY IDENTIFIED SOMEONE ELSE. THE EVIDENCE THAT BROWN HAD THE REQUISITE INTENT WAS VIRTUALLY NON-EXISTENT. THEREFORE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION."

### III.  STANDARD

Petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court  has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if

7

the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## IV.  DISCUSSION

### A.  Suppression of Inculpatory Statement

Petitioner asserts that the trial court erred in failing to suppress his inculpatory custodial statement; and his argument is premised upon four grounds: (1) the statement was involuntary; (2) the statement was coerced; (3) Petitioner's *Miranda* rights were violated; and (4) Petitioner's Fourth Amendment rights were violated.

### 1.  Involuntary Statement

Petitioner first contends that his confession to the police was involuntarily made.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F. 2d 454, 459 (6th Cir.1988).

The voluntariness of a confession is a mixed question of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police

8

coercion (a "crucial element"); (2) length of interrogation; (3) location of interrogation; (4)

continuity of Interrogation; (5) suspect's maturity; (6) suspect's education; (7) suspect's

physical condition & mental health; and (8) whether suspect was advised of *Miranda*

Rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors involved in the

giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S.

568 (1961). Without coercive police activity, however, a confession should not be deemed

involuntary. *Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate

to the finding that a confession is not 'voluntary' within the meaning of the Due Process

Clause"). The burden of proving that a confession was obtained involuntarily rests with the

petitioner. *Boles v. Foltz*, 816 F. 2d 1132, 1136 (6th Cir.1987). Voluntariness need only be

established by a preponderance of the evidence. *Id.*

### a. Coercion

Petitioner contends that his confession was coerced due to "pre-arraignment delay,

being held incommunicado for 51 hours in the filthy, roach infested 9th floor lockup with no

place to sleep . . . and [being denied] treatment for his vomiting and diarrhea." The

Michigan Court of Appeals disagreed:

> As the trial court noted in its opinion, several of these matters turn on the
> question of witness credibility. The trial court found that although defendant
> was indeed ill, his illness was not serious, did not manifest its worst
> symptoms until the morning after his confession, and did not require any
> treatment other than time. The trial court gave credence to the officers'
> testimony that defendant did not appear to be sick. We do not find any of
> these findings to be clearly erroneous. The trial court did not err in finding
> that the police did not take advantage of defendant's illness to force him to
> sign the statement.
>
> We also find no clear error in the trial court's finding that the delay in
> defendant's arraignment was not, in itself, a basis for suppressing

9

defendant's statement.  See *People v. Manning,* 243 Mich. App. 615, 620; 624 NW2d 746 (2000), holding that delay in arraignment is only one factor to be considered among the totality of the circumstances for determining whether a confession was made voluntarily.  *Id.*  at 644-645.  Although defendant was not arraigned until five days after he was taken into custody, the confession that he sought to suppress was given after he had been in custody for fifty-one hours, just three hours past the forty-eight-hour target.

*People v. Brown,* No: 245006, WL 2004 1103708, *5 (Mich. Ct. App. May 18, 2004).

Under 28 U.S.C. § 2254(e)(1) of the AEDPA, the factual findings of the state courts are presumed correct unless rebutted by clear and convincing evidence. *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996). Thus, the Michigan Court of Appeals' decision in this case, that Petitioner's statements were not coerced as a result of prearrangement delay, illness and unsanitary jail conditions,  is presumed correct.  Petitioner fails to establish that the state court determinations were contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### i.  Prearraignment Delay

A delay in arraignment for more than 48 hours after a warrantless arrest is presumptively unreasonable unless there are extraordinary circumstances. *Riverside Co., v. McLaughlin,* 500 U.S. 44, 56-57 (1991).  Petitioner contends that his statement was involuntary because of the delay between his arrest on September 8, 1999 and his arraignment before a magistrate on September 13, 1999.  An unnecessary delay in arraignment of defendant before a magistrate or other judicial officer is insufficient, in and of itself, to justify the suppression of an otherwise voluntary confession made during the period of the prearraignment delay; instead, delay is only one of several relevant factors

10

to be considered in determining the voluntariness of a criminal defendant's statements. *See United States v. Christopher,* 956 F. 2d 536, 538 (6th Cir. 1991).

Although Petitioner was arraigned five days after being taken into custody, his confession was obtained after a fifty-one hour period.  The circumstances under which this delay rose are as follows:

> The evidence adduced at the hearing from the police witnesses is that the Defendant was held for the purpose of trying to set up an additional live lineup after the one which had been conducted on September 10, 1999 because some of the witnesses were unavailable and also scared because of threats allegedly made by or on behalf of the Defendant.  Delays were also attributable to Investigator Simon being involved with the family of a victim in another homicide matter and the other officers Shaw and Fisher were out of the office attempting to secure and check out additional information involving Mr. Brown's case.

(Tr. Opinion, 2/17/00, pg. 5).  Since a delay in being arraigned alone cannot justify the suppression of an otherwise voluntary confession, it is necessary for the Court to review Petitioner's remaining claims of coercive conduct by law enforcement officials to determine if the totality of circumstances warrants the suppression of Petitioner's inculpatory statement.

### ii.  Illness

Petitioner claims that he was very sick and in need of medical attention during his detention.  Furthermore, he asserts that law enforcement officials used Petitioner's illness to their advantage in an effort to coerce a confession.  He says they neglected to treat him and allowed him to suffer until he provided an incriminating statement.  This issue was addressed by the trial court:

> While Mr. Brown's claims of illness have some support through the subsequent examination at Detroit Receiving Hospital on September 11,

11

1999, the finding indicates  that at most he had suffered stomach flu, which has a normal duration of 24-hours.  This ailment is one which is only cured by the passage of time.  The most serious  symptoms appeared on the morning of September 11, 1999  when he collapsed in his cell and was then immediately removed and taken to the hospital.  Prior to September 11, 1999 the symptomatology was not life threatening and outside of some minimal discomfort did not appear to be a factor in his making the statement on September 10, 1999 to the police.  All of the police testimony indicated no observations of any illness on September 10, 1999.  Even the testimony of Marcus Stewart[3] concerning the lineup appearance of Mr. Brown on September 10, 1999 indicated that Mr. Brown did not evidence any illness at that time.

(Tr. Opinion, 2/17/00, pp. 6-7).  There is trial testimony of two inmates in the jail on the

same floor as Petitioner (Marcus Stewart and Lawrence Shorter).  They corroborated  that

Petitioner vomited and had diarrhea on September 9, 1999 and September 10, 1999.

However, assuming this is true, it does not negate the voluntary and knowing nature of his

incriminating statements to the police.  See *Abela v. Martin,* 380 F.3d 915, 928 (6th Cir.

2004) (defendant's incriminating statements were voluntary even though his taped interview

had to be stopped briefly because he was vomiting from the effects of the previous night's

alcohol.   Defendant was also suffering from a broken nose).   Petitioner has not

demonstrated, nor does the record indicate, that he was mentally and physically impaired

and incapable of submitting to questions about Mr. Pierce's murder at the time he gave the

statement.

### iii.  Intolerable Jail Conditions

Petitioner says that the area where he was held after his arrest was deplorable (i.e.,

roach infested and filthy); and subjecting him to this kind of environment over a period of

---

[3]Marcus Stewart was an inmate who was in the 9th floor lock up with Petitioner on September 9, 1999 and September 10, 1999.

days was a form of coercion, resulting in Petitioner confessing to involvement in Mr.

Pierce's murder. The Michigan Court of Appeals does not address this issue. However,

during the suppression hearing, the trial court judge said he has been to the 9th floor

lockup where Petitioner was confined after his arrest:

> [Mr. Hart]: . . . . We also know from Marcus Stewart what the conditions on the 9th floor were like. They are by some people's standards inhumane. I don't know if the court has ever been up there, but at some point you may want to take a look.
>
> The Court: I been there.

(Tr. Evid., 1/31/00, pg. 84). Based upon the trial court's assessment of the testimony

regarding the jail conditions (i.e., credibility determination) as well as his own first hand

knowledge about the facility, the trial court did not find the conditions to require

suppression of Petitioner's statement. The Court defers to the factual findings of the trial

court for reasons set forth, *infra*.

### b. Miranda Rights

The Supreme Court stated in *Miranda v. Arizona*, 384 U.S. 436 (1966), that,

prior to any questioning, a suspect,

> must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning.

*Id.* at 444-45.

Although "[n]o single litmus-paper test for constitutionally impermissible interrogation

has been evolved," *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961), "coercive police

13

activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Factors that may be considered when determining whether an interrogation was constitutionally impermissible are: extensive cross-questioning by the police, undue delay in the arraignment, refusal to permit communication with friends and legal counsel, the duration and conditions of detention, the attitude of the police toward the suspect, the suspect's physical and mental state, and pressures which sap or sustain the suspect's powers of resistance and self-control. *Culombe*, 367 U.S. at 601-02. The ultimate test of voluntariness is whether the confession was:

> the product of an essentially free and unconstrained choice by its maker[.] If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Id*. at 602. "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda*, 384 U.S. at 444).

Petitioner asserts that his confession should be suppressed because law enforcement officials refused his requests for an attorney.  The Michigan Court of Appeals rejected Petitioner's argument:

> Although defendant testified that he requested an attorney several times and that he was told that consulting an attorney would be a waste of time and money, the trial court did not find this testimony credible.  Giving deference to the trial court's credibility determination, we find no clear error with respect to this finding.

*Brown,* No: 245006, WL 2004 1103708, *6.  Petitioner's testimony at the suppression hearing contradicted the police officers' testimony concerning Petitioner's request for an

14

attorney. This Court gives deference to the trial court's resolution of the credibility issue. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). This is particularly true where the trial court makes factual determinations at a suppression hearing. *Ramonez v. Berghuis*, 490 F.3d 482, 490-91 (6th Cir. 2007).

### c. Fourth Amendment Rights

Petitioner says that his arrest was without probable cause and, therefore illegal. He says any evidence obtained subsequent to his arrest (i.e., his incriminating statement), is fruit of the poisonous tree and must be suppressed.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court, however, held in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner filed a pretrial motion to suppress his statement as evidence that he was involved in Mr. Pierce's death. The trial court held an evidentiary hearing on Petitioner's motion and then denied it. Petitioner also raised his claim on appeal. The Michigan Court of Appeals adjudicated the claim on the merits:

15

Reviewing the record as a whole, we conclude that the police had amasssed sufficient information to establish probable cause for arrest on September 8, 1999.

*   *   *

In sum, the trial court did not err in finding that the police had sufficient probable cause to arrest defendant, and that his statement was therefore not the product of an unlawful arrest. The trial court also did not err in finding that defendant's allegations of coercion and denial fo his requests for an attorney were not credible. Accordingly, the trial court properly denied defendant's motion to suppress his statement.

*Brown,* No: 245006, WL 2004 1103708, *6-7.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003). Michigan has a proper procedure for criminal defendants to litigate their Fourth Amendment claims. *See e.g. People v. Ferguson,* 376 Mich. 90, 93-94; 135 N.W. 2d 357 (1965); *People v. Harris,* 95 Mich. App. 507, 509; 291 N.W. 2d 97 (1980).

"All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression . . . ." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986). Petitioner does not allege that the State of Michigan did not offer him an opportunity to

16

challenge the legality of his arrest in the state courts. Petitioner had a full and fair opportunity for presentation of his Fourth Amendment claim through the suppression hearing and there was no failure of the mechanism for raising his claim. Therefore, this Court is not required to address the substantive merits of Petitioner's Fourth Amendment claim.

After reviewing each of the three prongs of Petitioner's suppression argument, the Court does not find that the totality of circumstances constitutes a basis for determining that Petitioner's inculpatory statement to the police was not voluntary, knowing and intelligent.

### B.  Sufficiency of Evidence

Finally, Petitioner asserts that there is insufficient evidence to support his conviction for second-degree murder.  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West,* 73 F.3d at 83.

The last state court to issue a reasoned opinion regarding this claim, the Michigan

17

Court of Appeals, held, in pertinent part:

Defendant argues that the evidence was insufficient to support his conviction of second degree murder. When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror to find guilt beyond a reasonable doubt. *People v. Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v. Sexton*, 250 Mich App 211, 222; 646 NW2d 875 (2002).

To prove second-degree murder, the evidence must establish the following elements: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *People v. Aldrich*, 246 Mich App 101, 123; 631 NW2d 67 (2001). Here, defendant was also charged under an aiding and abetting theory. To support defendant's conviction pursuant to an aiding and abetting theory of guilt, the prosecutor was required to show that (1) defendant or some other person committed the crime charged, (2) defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) at the time that he gave aid and encouragement, defendant had (a) the requisite intent necessary to be convicted of the crime as a principal, or (b) knowledge that the principal intended its commission. *People v. Barrera,* 451 Mich 261, 294; 547 NW2d 280 (1996); *People v. Tanner*, 255 Mich App 369, 4 18-419; 660 NW2d 746 (2003), rev'd on other grounds 469 Mich 437 (2003).

Defendant indicated in his statement to Officer Simon that Swims shot Pierce, but defendant admitted that he aided and encouraged Swims by agreeing to the robbery and standing in back of Swims. The jury could also infer defendant's participation in the crime from evidence that defendant and Swims lingered around the party store where Pierce worked until Pierce left on his banking errand, that they then followed Pierce to the bank, and that they simultaneously approached Pierce from opposite sides of the parking lot after he completed the banking transaction.

Nonetheless, defendant argues that the evidence was insufficient to establish that he possessed the requisite intent for second-degree murder. He contends that there was no evidence showing that he knew Swims intended to shoot Pierce or knew that Swims was armed. We disagree.

The requisite level of malice for second-degree murder is the same as that for first-degree felony-murder. *People v. Flowers*, 191 Mich App 169, 176; 477 NW2d 473 (1991). We therefore rely on this Court's remarks in *Flowers,*

18

*supra* at 178, regarding proof that an aider and abettor possessed the requisite malice for felony-murder:

> In situations involving the vicarious liability of cofelons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants. In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, liability may be established on agency principles. [*People v*] Aaron, [409 Mich 672,] 731[; 299 NW2d 304 (1980)]....

In order to convict one charged as an aider and abettor of a first-degree felony murder, the prosecutor must show that the person charged had both the intent to commit the underlying felony and the same malice that is required to be shown to convict the principal perpetrator of the murder. Therefore, the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm. Further, if it can be shown that the aider and abettor participated in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he was acting with wanton and wilful disregard sufficient to support a finding of malice.

\*   \*   \*

Here, although there was no direct evidence that defendant was aware that Swims was armed, or that defendant himself was armed, there was sufficient circumstantial evidence for the jury to infer that defendant and Swims jointly planned to commit an armed robbery. There was evidence that the robbery was carefully planned in advance. It occurred on a day of the month when the store kept large reserves of money on hand in order to cash customers' government checks. Swims and defendant were observed lingering around the store for at least two hours, and they then followed Pierce when he left to go to the bank. They coordinated their movements so that they both approached Pierce from different directions at the same time. Their behavior afterward also suggested that they had formulated a plan to park their car away from the bank, and to entail the aid of Glenda Lewis in getting back to their car without going past the bank. The jury could infer from this careful planning that Swims' use of the gun was not an unforeseen circumstance. Furthermore, although defendant denied in his statement planning to kill Pierce, he did not deny knowing that Swims would be armed with a gun during the robbery.

*Brown,* No: 245006, WL 2004 1103708, *1-3.

19

Petitioner challenges the sufficiency of the evidence on two grounds: (1)  the *Jackson* standard was applied unreasonably; and (2)  the one witness who was in the parking lot at the time of the shooting (Chere Tutt) was not certain of her identification of Petitioner and Mr. Swims as the perpetrators. But, viewing the facts in the light most favorable to the prosecution, Petitioner fails to establish that the Michigan Court of Appeals decision was contrary to or an unreasonable application of Supreme Court precedent.

The trial testimony shows that Petitioner was seeking a partner with whom  to commit a robbery for months prior to Mr. Pierce being robbed and killed.  (Tr., 5/14/02, pp. 102-09, 118-25) (Tr., 5/15/02, pp, 66-71).  Moreover, because Petitioner confessed that he assisted in the crime and the Court found that his inculpatory statements were  voluntary, Petitioner's own statements provide additional support for the Court of Appeals factual findings.  The record also indicates that:

> Tutt informed the police that Pierce's two assailants ran behind the Motor City Medical Clinic after Pierce was shot.  This corresponded with the statement of Jeffrey Moore that he saw two men, Swims and a man he did not know, run from the alley behind the medical clinic and into the home of Glenda Lewis, Lewis and her daughter told the police that Swims and another man, whom Lewis had seen before, came to their house and asked for a ride. When the police showed Lewis a photograph of Swims and defendant, Lewis identified defendant as the man who came to her house with Swims. Furthermore, Lewis told the police that Swims directed her to drive to a location near the bank, but by using a circuitous route that avoided the bank. Additionally, two of defendant's neighbors saw him and Swims get out of the car and remove their shirts.  This was sufficient information "to justify a fairminded person of average intelligence in believing that the suspected individual has committed the felony.

*Brown,* No: 245006, WL 2004 1103708, *6 (internal citation omitted)..

The Court concludes that the Michigan Court of Appeals' decision, that sufficient evidence was presented to sustain Petitioner's conviction, did not "result[] in a decision that

. . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief on this claim.

## V. CONCLUSION

For the reasons stated, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

**IT IS ORDERED.**

        /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 25, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 25, 2009. <br><br> s/Linda Vertriest <br> Deputy Clerk |